JOHN W. PUTTS *vs.* ELIZABETH W. PENDLETON
ET AL., TRUSTEES.

*Construction of a Lease Providing for the Application of Insurance Money to Rebuilding.*

A lease provided that in case the building on the land demised be injured by fire the lessor should rebuild or repair the same with any money received from policies of insurance, provided the holders of such policies would permit or direct said money to be so used, which permission and direction the lessor "hereby agrees to request and does so request;" and provided also that in the event of the holders of the policies of insurance not allowing or directing the money received from them to be applied to the purpose of rebuilding, then the lease should become void. The declaration in an action for the breach of this covenant alleged that the building was destroyed by fire; that the policies of insurance on it were held by a mortgagee, to whom the loss was payable and was paid; that the plaintiff, the lessee, notified the defendant, the lessor, that he desired the reconstruction of the building; that it was the duty of the defendant to request the mortgagee to apply the insurance money to the rebuilding, but he failed to do so, and afterwards borrowed another sum on mortgage and used the same in the erection of a different kind of building. *Held,* that a demurrer to this declaration was properly sustained, since the defendant had, by the terms of the lease, requested the mortgagee to apply the insurance money to rebuilding, and was not in default because he did not make another request, and he was not obliged by the lease to endeavor to persuade the mortgagee to comply with the request, and because the declaration does not allege that it was by reason of the neglect of the defendant to make the request that the mortgagee did not use the money in rebuilding.

*Decided June 30th, 1909.*

Appeal from the Superior Court of Baltimore City (STOCK-BRIDGE, J.).

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*John Prentiss Poe* and *Edgar Allan Poe* (with whom was *Martin G. Kenney* on the brief), for the appellant.

*Frank Gosnell* and *Richard M. Duvall,* for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an action by the appellant against the appellees, who are trustees under the will of Mary J. Pendleton, for an alleged breach of a covenant in a lease from the appellees to the appellant of certain premises in the City of Baltimore. Profert of the lease was made by the appellant in his declaration, oyer was craved by the appellees and a demurrer was interposed to the declaration and to each of the two counts. The demurrer was sustained and a judgment on it was entered for the defendants for costs.

The *narr.* alleges, and the lease discloses, that the appellees leased to the appellant, for the term of fifteen years, beginning on May 1st, 1897, two lots of ground together with the buildings and improvements thereon. The first was on the corner of Charles and Fayette streets and fronted thirty feet, three inches, on Charles street with a depth of 113 feet and 10 inches on Fayette street, being of irregular width. The second adjoins the first on Fayette street and fronts thereon 19 feet with a depth of 73 feet, more or less. The appellant agreed to pay annually during the continuance of the lease the State and City taxes and the water rent, to keep the improvements then on the property, or that might be thereafter placed thereon, insured to the amount of $27,500.00, for the benefit of the appellees, their successors and assigns, and also to pay the interest as it became due upon two mortgages upon said premises, from Mary Jane Pendleton to the

Central Savings Bank of Baltimore—one bearing date September 5, 1891, and being for $18,000.00, and the other for $7,500.00, being dated January 29th, 1892. It was further agreed that in the event of the mortgages being released the lessee was to pay to the lessors an amount of money equal to the interest on the mortgages. The taxes, water rent, insurance and interest were to be considered as part of the rent, and in addition thereto, the appellant was to pay the appellees $2,328.99 each year during the lease, payable monthly. The appellant further covenanted that he would at his own expense and cost tear down the building or buildings on the first mentioned lot, and erect, in a good, workmanlike manner, a four-story warehouse thereon, to cost at least $25,000, and to connect the same with the warehouse then on the lot secondly described, both to be used for the conduct of the appellant's general merchandise business.

The clause in the lease which gives rise to the controversy is as follows: "And it is further agreed by the parties hereto, that should the said building to be erected as aforesaid upon the lot herein firstly described, and the building now erected upon the lot secondly described, become unfit for occupancy by fire, or unavoidable accident, not the fault of the party of the second part, his servants or agents, then, and in that event, the parties of the first part shall rebuild or reconstruct or repair said building with any money they may receive from the policies of insurance now, or that may be then on said property, provided the present or then assignees or holders of said policies shall permit and direct the money that may be received therefrom to be so used and applied, which permission and direction, the said parties of the first part hereby agree to request and do hereby so request, and provided further that said insurance money be paid within one year from the date of such fire or unavoidable accident, and provided further, that in the event of said insurance money not being paid under said policies within the period of one year, or of the assignees or holders of said policies not allowing or directing said money to be applied to the pur-

poses of rebuilding the property that may be so destroyed, then and in that event, this lease shall become absolutely null and void and the parties of the first part, their successors or assigns, shall have an immediate right of re-entry upon the same. It being further understood and agreed that in the event of said property being so destroyed or rendered untenantable by fire or unavoidable accident not the fault of the said party of the second part, his agents or servants, the said party of the second part shall have the right to remove from and quit said premises, upon first paying the rent proportionately and adjusting the taxes, water rent, premiums on insurance, and interest on the mortgages aforesaid (or its equivalent), to the day of fire or accident, and the rent and expenses aforesaid shall cease until the said parties of the first part may rebuild the said property as hereinbefore provided for. It is further agreed by and between the parties hereto that upon the termination of the tenancy hereby created, the buildings now or that may be hereafter erected upon the lots of ground herein firstly and secondly described, and all improvements thereon made by the party of the second part, shall become the property of the parties of the first part, their successors or assigns."

The declaration alleges that the plaintiff entered into possession of the premises, tore down the buildings on the lot first described, and erected a four-story warehouse at a cost of $32,000, and connected it with the warehouse then on the other lot. It further alleges that in the great fire in Baltimore, of February 7th and 8th, 1904, by an explosion from dynamite lawfully brought about by direction of the municipal authorities of the City, for the purpose of checking the fire, all of the buildings upon the two lots were totally destroyed by fire without any fault on the part of the plaintiff or his agents; that at the time of the fire the buildings were insured by policies of insurance amounting to $27,500.00, which policies were in the joint names of the plaintiff and defendants, with an endorsement thereon making the loss thereunder payable to the Central Savings Bank of Balti-

more, mortgagee; that after the fire the plaintiff was called on to facilitate the prompt collection of the insurance money and he at once endorsed the policies jointly with the defendants, so as to enable the insurance money to be paid to and received by said Central Savings Bank as such mortgagee; that said money was paid to the bank within four months thereafter and it paid $2,000.00 thereof to the defendants but no part was paid to the plaintiff. The *narr.* also alleges that the plaintiff notified the defendants that he desired the reconstruction of the buildings without delay, and it was the duty of the defendants to inform the bank that he so desired and to request it to apply the $25,500.00 of insurance money to the rebuilding within a reasonable time, but that the defendants utterly failed to so inform the bank of the plaintiff's desire, and to request it to invest $25,500.00 of said money in the rebuilding of said buildings for the use and benefit of the plaintiff as lessee, for his unexpired term, but on the contrary the defendants, on or about the           day of September, 1904, borrowed from said bank, upon a mortgage upon said premises, $60,000, and applied the same to the construction of a building on said lot for the use and occupation of other tenants, and leased to other tenants the said premises improved by a large new building at a large gain and profit to them, to wit, $14,000, or thereabouts, per annum.

It will be observed that the covenant on the part of the lessors was that they "shall rebuild or reconstruct or repair said building with any money they may receive from the policies of insurance now or that may be then on said property, provided the present or then assignees or holders of said policies shall permit and direct the money that may be received therefrom to be so used and applied, which permission and direction the said parties of the first part hereby agree to request *and do hereby so request.*" The terms of the insurance clause, presumably in the mortgages, are not stated in the *nar.*, but the lease was evidently drawn on the theory that the holders of the policies were not re-

quired to use the proceeds from them in rebuilding—as the·
obligation on the part of the lessors to use "any money they
may receive from the policies" was conditioned upon the
holders permitting and directing the money that might be
received therefrom to be so used and applied. According to
the *narr.,* the lessors did not in point of fact receive any
money from the insurance, excepting the $2,000, which of
course could not rebuild the building, and therefore tech-
nically it might be said there was no breach for that rea-
son, but, however that might be, they did so request by the
very terms of the lease.      If then a request from the lessors
was necessary, so as to authorize the bank to so use the money,
all that was required was for the appellant to show the bank
the provision in the lease, for it cannot be doubted that the
request so made would have justified the bank in so using
the money, so far as the appellees are concerned, if it was
willing and saw proper to do so.

It is not alleged in the *narr.* that the appellant asked the
appellees to make any further request, and if it was intended
by the parties to the lease that the appellees should make a re-
quest other than what they had already made in the lease
itself, the appellant ought to have made some such demand
on them. It is true it is alleged that he notified the defend-
ants that he desired the reconstruction of the buildings with-
out delay, but that was not equivalent to asking them to
make an additional request of the bank that it do so.   The
lease made no provision for any option on the appellant's part
as to the rebuilding. If the bank had determined to use the
insurance money in rebuilding, he certainly could not have
escaped liability under the lease on the ground that the ap-
pellees had not, after the fire, made a further request of the
bank to so use the money, or on the ground that he did not
desire it to be rebuilt. It was in no manner dependent upon
his wish on the subject, and as the bank had the undoubted
right to use the money in rebuilding, under the request con-
tained in the lease, there would have been no occasion for any

further request in order to bind the appellant to continue
under the lease.

The appellees' formal request, made over their hands and
seals, was as binding as it could well have been made, and
unless we construe the words "hereby agree to request" to be
equivalent to "hereby agree to endeavor to persuade," or
something to that effect, we cannot see what more they were
required to do. If before the fire, the appellees had ceased to
be trustees, or had sold the property, surely they could not
have been sued because they had not renewed the request. It
was not intended by the expression used in the lease to re-
quire them to use their influence to have the money applied
to rebuilding, but it was doubtless intended to obtain the
sanction and request of the appellees to have it so invested,
without which under some circumstances it could not have
been done. If, for example, the mortgages were overdue
when the fire occurred, it was the duty of the bank to apply
the insurance money to the payment of the mortgage debt,
in the absence of some such request of the appellees. If the
understanding was that the request would only be availing if
made after a fire then why add "and do hereby so request?"
The language of the covenant indicates an intention to have
the request then and there made, so as to make it binding on
the successors of the appellees, as well as on them. If the
theory of the plaintiff, as indicated by the *narr.*, is correct,
that defendants were liable for any loss which the plaintiff
may have sustained by reason of the buildings not being re-
placed, unless they made another request after the fire, he
ought at least to have alleged that he did demand of them
that such request be then made, for it would be incurring a
great responsibility for a mere neglect which might have so
easily been avoided by a demand or even suggestion that an
additional request be made. But we are of the opinion that
under a proper construction of the covenant, the appellees
are not in default because another request was not made.
The expression "hereby agree to request and do hereby so re-
quest" may be somewhat peculiar, but it is not unlike ex-

pressions which were formerly often found in leases—"do
hereby agree to demise and do hereby demise," or in a con-
tract of sale of land, "do agree to sell and do hereby bargain
and sell," etc.

But if there be any doubt about that construction of the
lease, we are of the opinion that it was necessary to allege
that it was by reason of the failure or neglect of the appellees
to make the request, that the bank did not use the insurance
money in rebuilding. If the bank was in fact unwilling to
continue the loans under the existing mortgages, or to use the
money in replacing the building which was destroyed, a re-
quest would have been of no avail and a failure to make it
was not the cause of any loss which the appellant suffered,
but it was the result of the bank's unwillingness to so use the
insurance money. That being so, it was incumbent on the
plaintiff to make that allegation, and to prove it if the case
went to trial. No fraud on the part of the appellees nor col-
lusion with the bank is alleged. The mere fact that in the
following September the defendants borrowed $60,000 from
the bank upon a mortgage upon said premises, improved by
a large new building from which the sum of $14,000.00 per
annum was realized, did not relieve the plaintiff from such
allegation, or suggest bad faith on the part of the appellees.
The bank might very well have declined, when it received the
money in June, to reinvest the $25,500.00 in any building
on the premises, and yet in September might have concluded,
owing to changed conditions in Baltimore after the expira-
tion of that time from the date of the fire, to loan that sum
and more. Indeed, if a building on which it loaned $60,000
realized $14,000 per annum as rent, it is not difficult to
understand why the bank might readily make such a loan
when it would not invest $25,500.00 if the improvements
were to be such as those on the property at the time of the
fire. They were constructed to suit the business of the ap-
pellant, and, in the event of anything happening to him,
might not have been suited to that of any other tenant, while
from the allegations in the *narr.* it may be seen that a very

different sort of building was erected, which was not occupied by one tenant alone but by "other tenants."

In reference to the second count, it is only necessary to say that the covenant in the lease only required the appellees to rebuild on the conditions therein set out, which we need not here repeat. They did not covenant to rebuild at all events, in case of fire, but only under the circumstances stated above.

So without discussing other reasons suggested by the appellees, we are of the opinion that the demurrer was properly sustained, and the judgment must be affirmed.

> *Judgment affirmed, the appellant to pay the costs above and below.*